IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOEL E. CAPE, PLC d/b/a CAPE LAW FIRM, PLC;
and JOEL E. CAPE, Individually                                    **PLAINTIFFS**

V.                              CASE NO. 5:24-CV-5104

**CAPE LAW PC and AKIKO ENDO**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants Cape Law PC ("CLP") and Akiko Endo's Motion to Dismiss (Doc. 41) and Plaintiffs Joel E. Cape, PLC and Joel E. Cape's Motion for Leave to Conduct Jurisdictional Discovery (Doc. 45). Both Motions have been fully briefed, and the Court heard argument at its Rule 16 Case Management Conference on November 12, 2024. Pursuant to a joint stipulation by the parties, Ms. Endo is **DISMISSED WITHOUT PREJUDICE**,[1] leaving CLP as the only remaining Defendant. See Doc. 50. For the reasons stated herein, the Motion to Dismiss (Doc. 41) is **GRANTED IN PART and DENIED IN PART**, and Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (Doc. 45) is **MOOT**.

Initially, CLP and Ms. Endo moved to dismiss for lack of personal jurisdiction, improper venue, and for failure to state a claim. (Doc. 41). Joel Cape and his firm filed a Response (Doc. 44) and moved for leave to take jurisdictional discovery, (Doc. 45). Defendants filed a Reply to the Motion to Dismiss (Doc. 46). Based on Ms. Endo's

---

[1] This stipulation was subject to the following conditions: (1) Ms. Endo shall sit for deposition at least by December 30, 2024; (2) any applicable limitations periods shall be tolled pending the resolution of Ms. Endo's liability; and (3) Ms. Endo otherwise preserves all defenses for any future suit that may be brought against her, subject to the tolling of the limitations periods. (Doc. 50, p. 1).

1

dismissal and certain concessions in CLP's Reply as to personal jurisdiction and venue, the only remaining issues for this Court to decide are CLP's Motion to Dismiss Counts III, IV, and V for failure to state a claim under Rule 12(b)(6). Thus, the Motion for Leave to Conduct Jurisdictional Discovery is moot.

## I. BACKGROUND[2]

This case arises out of a trademark dispute. Joel Cape first opened his law firm in 2013 under the trade name "Law Firm of Joel E. Cape, PLC." (Doc. 34, ¶ 30). In 2016, the law firm registered and began using the name "Cape Law Firm, PLC." *Id.* at ¶ 31. Joel Cape and his firm have continued to use this trade name as well as the marks "CAPE" and "CAPE LAW FIRM" since 2016. *Id.* at ¶ 32. Joel Cape's firm is located in Fayetteville, Arkansas and specializes in agricultural law.

In mid-2022, a for-profit corporation was incorporated in Arizona under the name "Cape Law PC." *Id.* at ¶ 36. Around November 2022, CLP launched an interactive online platform using the marks "CAPE" and "CAPE LAW." *Id.* at ¶¶ 39–40. Despite various marks and online statements claiming that CLP is a law firm, according to the First Amended Complain, it is actually a legal referral service that matches customers in need of legal services to attorneys that CLP contracts with. *Id.* at ¶ 123. At the time of the filing of this case, Ms. Endo was serving as CLP's sole director and managing attorney, as well as President, Secretary, and Treasurer. *Id.* at ¶¶ 55–56.

By January 2023, not long after CLP's online platform launched, Joel Cape began receiving phone calls and emails at his firm from frustrated and confused customers who

---

[2] All facts are taken from the First Amended Complaint (Doc. 34) and, for the purpose of evaluating the Motion to Dismiss, are accepted as true.

believed they had hired him to be their attorney when, really, they had signed up with CLP. *Id.* at ¶ 51. These customers reported to Joel Cape that CLP's website claimed to allow customers to open cases instantaneously online by submitting credit card payment information and agreeing to a fee. *Id.* at ¶ 44. One such customer told Joel Cape that they had hired CLP specifically because of its statement that it could sue companies and send demand letters in under twenty minutes. *Id.* at ¶ 50. When over a week had passed without CLP contacting the customer or even reviewing the matter, the customer erroneously called Joel Cape to demand a refund. *Id.* at ¶ 50. The most common complaints Joel Cape received from customers of CLP were: (a) the customer's credit card had been charged without authorization; (b) the customer paid a fee and received no legal services; (c) CLP failed to appear in court or provide correct dates for court appearances; (d) the customer had a poor case outcome, such as dismissal; and (e) CLP failed to communicate or update the customer. *Id.* at ¶ 52.

After two months of receiving such calls, Joel Cape contacted CLP and demanded they cease use of the marks "CAPE" and "CAPE LAW," but with no success. *Id.* at ¶¶ 53, 55, 58. In July 2022, CLP's marketing service, Lexense Technologies, filed an intent-to-use trademark application with the U.S. Patent and Trademark Office to register the mark "CAPE LAW," and Joel Cape filed his opposition to that application. *Id.* at ¶ 59.

Since the launch of CLP's online platform, Joel Cape and his firm have received over 1,000 calls from confused CLP customers, expressing frustration, seeking refunds, or attempting to cancel the monthly payments. *Id.* at ¶ 62. Additionally, CLP customers have expressed their dissatisfaction by posting google reviews intended for CLP on Plaintiff's business's listing with comments such as "this is a scam do not give them your

credit card info," "[t]hese people are not lawyers," and "DO NOT hire them." *Id.* at ¶ 63. Disgruntled customers have also filed complaints against Plaintiffs with the Better Business Bureau, attributing CLP's actions to Joel Cape and his law firm. *Id.* at ¶ 64.

The confusion between CLP and Joel Cape's Firm does not end with customers. When CLP has sent demand letters, some of the responses have been sent back to Joel Cape and his firm. *Id.* at ¶ 65. Additionally, corporate recruiters and employment agencies have contacted Joel Cape when attempting to respond to CLP's job postings. *Id.* at ¶ 66.

Part of the problem is that CLP's website makes it difficult to find the name of an actual attorney that works for them. *Id.* at ¶ 57. CLP does not provide accurate contact information for its attorneys to its customers or recipients of demand letters, leaving such parties to contact Joel Cape and his firm in error. *Id.* at ¶¶ 71–72. CLP has not taken steps to remedy the confusion, and, instead, has doubled down by launching a Google advertising campaign using the mark "CAPE LAW FIRM." *Id.* at ¶ 74. Further, CLP's LinkedIn page lists Joel Cape as an employee—a mistaken association that CLP has failed to correct. *Id.* at ¶ 75.

The First Amended Complaint brings five causes of action: Count I, False Association and Unfair Competition, 15 U.S.C. § 1125(a)(1)(A); Count II, Unfair Competition and Infringement under Common Law and Arkansas Law, Ark. Code Ann. §§ 4-71-201–216; Count III, False Advertising, 15 U.S.C. § 1125(a)(1)(B); Count IV, Violation of Right of Publicity, Ark. Code Ann. §§ 4-75-1101 *et seq.*; and Count V, Negligence.

## II. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). "The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

"When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). Further, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court may consider "materials that are part of the public record or do not

contradict the complaint" and documents "necessarily embraced by the pleadings." *Id.* (quotations and citations omitted).

## III. DISCUSSION

### A. Count III: False Advertising under the Lanham Act

The Lanham Act states in relevant part that any person who, in connection with any services, uses a false or misleading description or representation of fact, which "in commercial advertising or promotion, misrepresents the nature, characteristics[ or] qualities . . . of his or her . . . services, or commercial activities," is liable to any person "who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B). The Eighth Circuit has further explained the elements of a false advertising claim under the Lanham Act:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011). A false advertising claim under the Lanham Act can only be maintained where the plaintiff's injuries fall within the "zone of interest," meaning a commercial injury in reputation or sales. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). Additionally, a plaintiff must plausibly allege that its injuries were proximately caused by the alleged misrepresentations. *Id.* at 133–34 (stating the plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's

6

advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff").

CLP here moves for dismissal on the basis that Joel Cape and his firm failed to plead proximate causation, arguing that the alleged injury to Plaintiffs is the result of the alleged trademark infringement and resulting confusion, not of any false advertising. (Doc. 42, p. 24). Using the Eighth Circuit's five elements as a guide, the Court concludes that the First Amended Complaint states a plausible claim for relief. Joel Cape and his firm have pled: (1) that CLP made false statements about its services and abilities in commercial advertisements, (2) that these false statements had a tendency to deceive a substantial segment of its audience as evidenced by the calls and communications Joel Cape and his firm have received, (3) that the statements were material in inducing people to choose to purchase CLP's services, (4) that CLP caused these statements to enter interstate commerce, and (5) that Joel Cape and his firm were injured by a loss of goodwill as a result of these misstatements, *see, e.g.*, Doc. 34, p. 21 (including screenshot of reviews that accuse Joel Cape and his firm of being a "scam" and "not [a] real attorney"). Though the Court sees reason in CLP's argument as to proximate causation, for 12(b)(6) purposes, the Court finds it plausible that the alleged reputational injury flows directly from CLP's alleged deception that caused consumers to withhold trade from Joel Cape Entitities. *See Lexmark*, 572 U.S. at 133–34.

### B. Count IV: Violation of Right of Publicity under Arkansas Law

In 2016, the Arkansas legislature implemented the Frank Broyles Publicity Rights Protection Act which codified an individual's property right in the commercial use of their name, voice, signature, photograph, or likeness. *See* Ark. Code Ann. §§ 4-75-1101, 4-75-

1104(a). This Act creates a statutory cause of action against a person who commercially uses any of these identifying features without authorization. Ark. Code Ann. § 4-75-1108. The statute defines "[c]ommercial use" to mean "the use of an individual's readily identifiable name, voice, signature, photograph, or likeness" "[f]or advertising" or "soliciting purchases of . . . services," or "in connection with . . . other commercial activity that is not exempt under this subchapter." Ark. Code Ann. § 4-75-1103. These protections were codified in recognition of Arkansans' investment and hard work put into "maintaining reputations of honest and integrity," for the benefit of the individual and their families. *See* Ark. Code Ann. § 4-75-1102.

Joel Cape asserts that CLP violated his right of publicity by using his last name, "Cape," for advertising and soliciting business and by associating his individual LinkedIn page with that of CLP. CLP contends that use of the word "cape" without the inclusion of Joel Cape's first name or any reference to his person fails to state a plausible claim for violation of the right of publicity. As to the LinkedIn association, it argues that Joel Cape fails to plead that it was CLP who made the association between him and CLP, as opposed to Joel Cape mistakenly associating himself with CLP.

As for the alleged LinkedIn association, the Court finds it is plausible that CLP associated its page with that of Joel Cape, thereby using his "readily identifiable" name and likeness for purposes of advertising and soliciting business. The Court is unpersuaded by CLP's argument that Joel Cape fails to plead any facts showing that CLP was involved in this association or that Joel Cape did not authorize the association. It is an entirely plausible inference from the facts pled that CLP made this association without Joel Cape's authorization. *See, e.g.*, Doc. 34, ¶ 75 (alleging that Defendants "have made

8

false and misleading association between CLP and Mr. Cape in CLP's LinkedIn advertising which falsely states that [Mr. Cape is] employed by CLP"); *id.* at ¶ 144 ("Defendants have used Plaintiff's name and persona for advertising, selling, and soliciting the purchase or legal services and other commercial activities without Plaintiff's authorization."). CLP argues that such associations on LinkedIn are within the individual's control, not the affiliated organization's, and submits outside evidence of LinkedIn's functionality in support. (Doc. 42, p. 26; Doc. 41-7). This argument asks the Court to look outside the pleadings and make a factual determination as to LinkedIn's functioning, which the Court declines to do for purposes of this Motion.

The Court finds that the alleged LinkedIn association makes it plausible that CLP used Joel Cape's "readily identifiable" name or likeness. Ark. Code Ann. § 4-75-1103. The LinkedIn affiliation provides the identifying context that might otherwise be lacking had CLP only used the generic word "cape," with no other connection to Joel Cape. *See Johnson v. Jackson*, 2021 WL 2826427, at *3 (N.D. Ala. July 7, 2021) ("[U]sing a person's first name is insufficient as a matter of law to establish an indicia of identity where there is no significance between the first name and the context in which it is used. Rather, a first name must be used in such a manner that it is understood by the audience that it refers to the plaintiff." (cleaned up)). This context is further bolstered by the fact that CLP presents itself as a law firm, and Joel Cape is an attorney who owns a firm with a similar name. *See* Restatement (Third) of Unfair Competition § 46 (1995) (The use of one's name must be "sufficient to identify the person whose identity the defendant is alleged to have appropriated. If the appropriation consists of the use of a name, . . . the name as used by the defendant must be understood by the audience as referring to the plaintiff.");

9

J. Thomas McCarthy, 1 Rights of Publicity and Privacy § 4:50 (2d ed. 2024) (explaining that, where a name has a non-name meaning as well, the case should only proceed to a jury where the plaintiff "could produce evidence that name and context pointed to them").

### C. Count V: Negligence

Lastly, Joel Cape and his firm make a claim for negligence, alleging that CLP owed a duty of care to Plaintiffs to not use the mark in a confusingly similar manner and that it breached its duty by doing so, thus causing injury. (Doc. 34, p. 36). CLP refutes this and argues that this is simply a trademark infringement claim impermissibly dressed up as a negligence claim. (Doc. 42, pp. 27–28).[3] The Court agrees with CLP that the negligence cause of action really revolves around the trademark infringement.

The parties and Court were hard pressed to find helpful caselaw on this issue. While CLP does cite to cases where courts had dismissed negligence claims for trademark infringement, in part, because the parties had not cited "any [state] case law that would permit a trademark claim to be brought as a negligence claim," those cases also dismissed the underlying trademark infringement for failure to state a claim. *Lops v. YouTube, LLC*, 2023 WL 2349597, at *4 (D. Conn. Mar. 3, 2023) (citing *Ure v. Fineline Indus., Inc.*, 2004 WL 1498140 (D. Conn. June 24, 2004)) (dismissing an "intentional negligence" claim). Meanwhile, Joel Cape and his firm cite to several cases in which courts stated that junior users of a mark have a duty to the senior user to avoid likelihood of confusion, but none of these cases discussed a duty of care in the negligence context.

---

[3] In Joel Cape and his firm's response and argument at the Rule 16 Conference, they argue that CLP had further duties to its customers and the legal profession more broadly. *See* Doc. 44, p. 32. Not only did the First Amended Complaint not raise these duties, the Court is unpersuaded that Joel Cape and his firm would have a cause of action for breach of such duties even if they existed.

*See, e.g., Lesportsac, Inc. v. K Mart Corp.*, 607 F. Supp. 183, 187 (E.D.N.Y. 1984), *aff'd*, 754 F.2d 71 (2d Cir. 1985); *NLC, Inc. v. LENCO Elecs., Inc.*, 798 F. Supp. 1419, 1426 (E.D. Mo. 1992)). Lastly, Joel Cape and his firm cite to a case in which the court allowed both a negligence claim and a false advertising claim under the Lanham Act to proceed. *U.S. Structural Plywood Integrity Coal. v. PFS Corp.*, 524 F. Supp. 3d 1320 (S.D. Fla. 2021). That case, however, relied on the fact that the defendant's misrepresentations about its products' compliance with safety standards created a "foreseeable zone of risk" that posed a general threat of harm to others and, thereby, created a duty of care. *Id.* at 1338–40.

Nevertheless, courts seem to lean towards finding there is no duty. *Lops*, 2023 WL 2349597, at *4 (expressing hesitation as to whether there is a negligence cause of action for trademark infringement); *see also McZeal v. Amazon Servs., LLC*, 2021 WL 5213099, at *5 (C.D. Cal. Nov. 8, 2021), *aff'd sub nom. McZeal v. Amazon.com Servs., LLC*, 2023 WL 3563009 (9th Cir. May 19, 2023) (describing a gross negligence claim as "simply a recitation" of the plaintiff's trademark infringement claim and stating there were no allegations "to suggest any reason why Defendants would owe [plaintiff] a duty of care here."). Similarly, this Court does not see how § 1125(a)(1)(A) imposes a duty of care in the context of negligence. Accordingly, Count V is dismissed.

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that the Motion to Dismiss (Doc. 41) is **GRANTED IN PART and DENIED IN PART**, and Count V of the First Amended Complaint is **DISMISSED**. Additionally, the Court finds Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (Doc. 45) to be **MOOT**.

**IT IS FURTHER ORDERED** that Akiko Endo be **DISMISSED WITHOUT PREJUDICE** subject to the parties' stipulated conditions in Doc. 50.

**IT IS SO ORDERED** on this 20th day of November, 2024.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE