IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOEL E. CAPE, PLC d/b/a CAPE LAW FIRM, PLC,
and JOEL E. CAPE, Individually                                    PLAINTIFFS

V.                          CASE NO. 5:24-CV-5104

CAPE LAW PC                                                        DEFENDANT

### CONSENT JUDGMENT AND PERMANENT INJUNCTION

On May 14, 2024, Plaintiffs Joel E. Cape, PLC d/b/a Cape Law Firm, PLC, and Joel E. Cape, individually, (collectively, "Original Cape Law") brought a Complaint, seeking injunctive and monetary relief against Defendants Cape Law PC ("CLP"), Josh Morgenstern, and Akiko Endo for alleged false association, unfair competition, and false advertising under the Lanham Act; unfair competition and infringement under Arkansas law; violation of the right of publicity under the Frank Broyles Publicity Rights Protection Act, Ark. Code Ann. § 4-75-1101 *et seq.*; and negligence under Arkansas law.

On August 28, 2024, Original Cape Law filed a First Amended Complaint ("FAC"). And on September 12, 2024, the Court entered an order conditionally dismissing Mr. Morgenstern without prejudice. On November 12, 2024, the Court entered a Memorandum Opinion and Order (Doc. 56) denying dismissal as to Counts III (false advertising) and IV (violation of publicity rights) but dismissing Count V (negligence). The Court's order also conditionally dismissed Ms. Endo without prejudice pursuant to the parties' joint stipulation.

1

Original Cape Law and CLP (collectively, "Parties") have entered into a Settlement Agreement, made effective as of the Effective Date defined therein, and expressly agree and consent to the entry of this Consent Judgment and Permanent Injunction in resolution of the dispute among them and in performance of the Settlement Agreement. An executed copy of the Settlement Agreement is attached as **Schedule "A"** to this Consent Judgment and Permanent Injunction. This Consent Judgment and Permanent Injunction is being entered to effectuate the settlement of the matters alleged in the FAC.

## THE PARTIES

1. Plaintiff, Joel E. Cape, (sometimes referred to herein as "Mr. Cape") is a citizen and resident of Washington County, Arkansas.

2. Plaintiff, Joel E. Cape, PLC d/b/a Cape Law Firm, PLC (sometimes referred to herein as "Cape Law Firm") is a professional limited liability company organized under Arkansas law with its principal office at 217 E. Dickson Street, Suite 106, Fayetteville, AR 72701.

3. Mr. Cape and Cape Law Firm are referred to herein as "Original Cape Law."

4. Defendant, Cape Law PC ("CLP") is an Arizona corporation, with its principal office at 7077 E. Marilyn Road, Suite 130, Scottsdale, AZ 85254.

## STIPULATED FINDINGS

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

6. This Court has personal jurisdiction over Defendant CLP for this action.

7. Venue is proper over CLP in this District pursuant to 28 U.S.C. § 1391 for this action.

8. Plaintiff Cape Law Firm is the owner of the trade names "Joel E. Cape, PLC," "Law Firm of Joel E. Cape, PLC," and "Cape Law Firm, PLC" (collectively, "JECape Trade Names") which it has used in interstate commerce for many years prior to this lawsuit.

9. Plaintiff Cape Law Firm is also the owner of valid and enforceable common-law service mark rights to the marks CAPE and CAPE LAW FIRM in certain jurisdictions including Arkansas, which it has used in interstate commerce for many years prior to this lawsuit and which are the subject of U.S. Trademark Application Serial Nos. 97796594 and 97796518, and is the owner of the registered Arkansas state service mark CAPE LAW FIRM, Registration No. 811487757 (the "JECape Marks").

10. The Parties stipulate that certain online databases (including Google Reviews) display at least 38 negative or incorrect reviews of Plaintiff, which arose from reviewers and consumers who mistakenly believed they were reviewing CLP's services, thereby harming Plaintiff's professional legal reputation. The Parties stipulate, and the Court hereby agrees, such negative or incorrect reviews: (1) incorrectly, inappropriately, and falsely referenced Original Cape Law's services when they intended to reference CLP's services; (2) made negative or incorrect comments regarding Original Cape Law's services that were intended to be made regarding CLP's services; (3) inappropriately and incorrectly tied the reviews to Plaintiff's services; (4) violate Google's standards and policies against being materially misleading, having misinformation, and having unsubstantiated allegations of unethical behavior or

3

wrongdoing on the part of Plaintiff; (5) contain false or misleading accounts of the description or quality of a service offered by Plaintiff; (6) harmful content that depicts false, inaccurate, or deceptive information about Plaintiff's business; and is (7) offensive or off-topic to Plaintiff's services.

11. This Consent Judgment and Permanent Injunction constitutes a final judgment on the merits of Plaintiffs' claims for purposes of res judicata, collateral estoppel, issue preclusion, and claim preclusion.

## PERMANENT INJUNCTION

12. In this Permanent Injunction, the word "CAPE," the JECape Marks, and the JECape Trade Names shall be referred to collectively as the "Enjoined Marks."

13. Except as provided in paragraphs 14 through 16 herein, CLP, its predecessors, successors, affiliates, subsidiaries, assigns, and all other persons, companies, and entities in active concert or participation with CLP (including Lexense Technologies Ltd.) (collectively "Enjoined Parties") are permanently enjoined and restrained, directly or indirectly:

> a. from all use of the Enjoined Marks in connection with services, products, and business, including advertising, marketing, selling, and/or offering to sell any services, products, or business;
>
> b. from all use of the Enjoined Marks in advertising, marketing materials, websites, online platforms, domain names, metatags, keywords, advertising keywords, letterhead, business cards, online uses, online marketing, social media, social media handles, social media uses, and the like;
>
> c. from incorporating the Enjoined Marks in any trade name or trademark;
>
> d. from all use of any mark that is confusingly similar to, or a colorable imitation or dilutive of the Enjoined Marks;

4

    e. from making or displaying any statement, representation, or depiction that is likely to lead the public to believe that (i) CLP is in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Original Cape Law or (ii) Original Cape Law is in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with CLP;

    f. from registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Enjoined Marks, or any other marks whose use would infringe or would likely to be confused with the Enjoined Marks, or any goods or services of Original Cape Law, or Original Cape Law as their source; and

    g. from aiding, assisting, or abetting any other individual or entity in doing any act prohibited by paragraph 13(a) through paragraph 13(f).

    h. For purposes of paragraph 13 of this permanent injunction, the term "use" shall mean the bona fide use in the ordinary course of trade.

    i. CLP, LEX, and those acting in active concert with CLP and LEX, as defined above, are not prohibited from using the word "cape" in its generic sense that does not denote the origin of a good or service or dilute the Enjoined Marks (i.e., use of the word cape to denote a geographic region, an article of clothing, and an animal pelt).

    14. In the Settlement Agreement, Original Cape Law granted to CLP, those acting on CLP's behalf, and in active concert or participation with CLP (including LEX) a limited, non-exclusive, transitional use license to use the Enjoined Marks until **June 22, 2025** to phase-out its use of the Enjoined Marks ("Mark Phase-Out License"), and a limited, non-exclusive, transitional use license to use the domain name "capejustice.com" until **December 31, 2025** to phase-out its use of the domain name "capejustice.com" ("Domain Phase-Out License"), and agreed that certain internal use by CLP, those acting on CLP's behalf, and in active concert or participation with CLP (including LEX) is permitted ("Internal Use"). The Mark Phase-Out License authorizes

5

CLP to use the Enjoined Marks to engage in the activities in paragraph 13 in accordance with the license terms while that license is in effect, and the Domain Phase-Out License authorizes CLP to use the domain name "capejustice.com" to engage in the activities in paragraph 13 in accordance with the license terms while that license is in effect. Therefore, actions by CLP, those acting on CLP's behalf, and in active concert or participation with CLP (including LEX) that fall within the Mark Phase-Out License, Domain Phase-Out License are not enjoined while those licenses are in effect, and actions that fall within the Internal Use provisions of the Settlement Agreement are not enjoined. A copy of the Settlement Agreement containing the terms of the limited, non-exclusive, transitional use licenses is attached as **"Schedule A"** to this Consent Judgment and Permanent Injunction. The Parties stipulate and agree that that Schedule A is confidential and shall be submitted under seal. Schedule A shall remain confidential unless CLP fails to perform any provision therein. The Parties shall submit a redacted version of Schedule A for filing in the Court's public record.

15. The Parties recognize that CLP customers and potential customers that existed prior to June 22, 2025 ("Old CLP Customers") may be confused and/or may make comments after June 22, 2025. The Parties agree that OLD CLP Customers are not within CLP's control and are therefore not Enjoined Parties and are not bound by this Injunction. This Injunction does not include any restriction or provision that can be enforced against CLP because of acts by Old CLP Customers.

16. The Parties agree that the disassociation of Mr. Cape's LinkedIn profile with CLP's LinkedIn profile shall be governed by the applicable terms of the Settlement Agreement and not this Consent Judgment and Permanent Injunction.

17. Within twenty (20) days of entry of this Consent Judgment and Permanent Injunction, CLP shall instruct and cause its licensor, Lexense Technologies Ltd., to file with the U.S. Patent and Trademark Office an express abandonment/withdrawal *with prejudice* of U.S. Trademark Application Serial No. 97492395 pending for the mark CAPE and U.S. Trademark Application Serial No. 97492400 pending for the mark CAPE LAW, and to take any other actions reasonably necessary to accomplish abandonment of those applications.

18. No later than December 31, 2025, CLP shall transfer ownership of the domain name "capejustice.com" to Cape Law Firm or its authorized agent.

19. Without prejudice to the enjoined activities giving rise to claims of false affiliation, false connection, false association, false designation of origin, and otherwise actionable under 15 U.S.C. § 1125(a)(1)(A) all of which shall be enjoined in accordance with paragraph 13 above, CLP's alleged false statements and misrepresentations in CLP advertising giving rise to claims under 15 U.S.C. § 1125(a)(1)(B) that were made prior to the Effective Date of the Settlement Agreement that continue to be made after the Effective Date are not subject to paragraph 13 above.

## MONETARY JUDGMENT

20. A monetary judgment is entered against CLP and in favor of Original Cape Law as specified in **"Schedule B"** of this Consent Judgment and Permanent Injunction. The Parties stipulate and agree that that Schedule B is confidential and shall be submitted under seal. Schedule B shall remain confidential unless CLP fails to perform any provision therein. The Parties shall submit a redacted version of Schedule B for filing in the Court's public record.

21. Upon CLP's full and complete performance of Schedule "B", Original Cape Law will provide CLP with a satisfaction of the monetary judgment provisions of this Consent Judgment and Permanent Injunction, and all other provisions will remain valid, continuing, enforceable, and in full effect. CLP's failure to complete performance of Schedule B shall revoke the confidential designation, allow the seal upon Schedule B to be removed, and entitle Original Cape Law to proceed with enforcement and execution of the monetary judgement, together with all other remedies which Original Cape Law may request or otherwise be entitled.

22. This Consent Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, successors, assigns, and acquiring companies.

23. If CLP is found by the Court to be in contempt of, or otherwise to have violated this Consent Judgment and Permanent Injunction, the Parties agree that Original Cape Law shall be entitled to all available relief which it may otherwise request from the Court, including sanctions for contempt, damages, injunctive relief, attorneys' fees, costs, and any other relief deemed proper in the event of such violation.

24. The Court retains jurisdiction of this matter for the purposes of enforcing the terms of this Consent Judgment and Permanent Injunction and the terms of the Settlement Agreement.

25. The Permanent Injunction shall remain in full force and effect unless and until modified by order of this Court.

## SCHEDULE A

[filed under seal]

## SCHEDULE B

A. Original Cape Law and CLP stipulate and agree to the entry of monetary judgment against CLP and in favor of Original Cape Law in the amount of ███████ ███████████████████████████████.

B. Original Cape Law and CLP stipulate and agree that CLP shall satisfy the judgment in this Schedule B by delivering payments to Original Cape Law as follows: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ which shall be due and payable on the first business day of each month following the month in which the First Payment is made until the monetary judgment is paid in full.

C. Upon CLP's full and complete performance of Schedule B, Original Cape Law will provide CLP with a satisfaction of the monetary judgment provisions of this Consent Judgment and Permanent Injunction, and all other provisions will remain valid, continuing, enforceable, and in full effect.

D. In the event that CLP fails to satisfy any portion of the monetary judgment, including failing to make any payment on the date which it becomes due, the Parties agree and stipulate that the confidential designation of Schedule B shall be immediately and irrevocably revoked, the seal upon Schedule B shall be removed, and Plaintiff shall be entitled to immediately proceed with enforcement and execution any unpaid portion of the monetary judgement, and to obtain any remedy to which Original Cape Law may be entitled in accordance with the terms of this Consent Judgment and Permanent Injunction, the Settlement Agreement, or otherwise available under law.

IT IS SO ORDERED on this 24th day of January, 2025

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

CONSENTED TO:

**Cape Law PC**

By: *Akiko Endo*
Akiko Endo, President and CEO

Date: January 23, 2025

Joel E. Cape, PLC d/b/a Cape Law Firm, PLC

By: _____
Joel E. Cape, President

Date: January 23, 2025

Joel E. Cape

By: _____

Date: January 23, 2025